**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **BROWN & WILLIAMSON** | : | |
| **TOBACCO CORPORATION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No.** |
| **v.** | : | **5:09-cv-00125 (HL)** |
| | : | |
| **CLAUDIA J. COLLIER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## ORDER

Currently before the Court are Plaintiff's Motion for Summary Judgment (Doc. 31) and Defendants' Motion for Summary Judgment (Doc. 29). Both parties contend that they are entitled to judgment as a matter of law. For the reasons set forth below, the Court grants Plaintiff's Motion, and denies Defendants' Motion.

**I.     Background**

Plaintiff Brown & Williamson Tobacco Corporation (hereinafter "Brown & Williamson") maintains and funds a welfare and benefit plan (hereinafter "Plan") for its employees pursuant to ERISA, 29 U.S.C. § 1001, *et seq.*. The Plan provides health and medical benefits to plan participants and covered dependents.[1]

---

[1] The Court notes that the Colliers deny some of the facts asserted in Brown & Williamson's Statement of Material Facts (Doc. 31-8); however, according to Local Rule 56, "[a]ll material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed admitted, unless otherwise inappropriate." As a result of the Colliers'

Defendant Terry Collier was an employee of Brown & Williamson, and a participant in the Plan within the meaning of 29 U.S.C. § 1002. Defendant Claudia Collier ("Mrs. Collier") was also a beneficiary and covered dependent under the terms of the Plan.

On December 4, 2002, Mrs. Collier underwent laparoscopic Roux-en-Y gastric bypass surgery at Coliseum Medical Center. She was discharged from the hospital in routine fashion, but was readmitted several days later because of complications associated with the gastric bypass surgery. (Collier Dep., p. 7:20). Mrs. Collier suffered heart problems, lung and breathing problems, and kidney failure, among other health issues. (Collier Dep., p. 24:8, 24:11, 24:14, 24:18). She went into a coma and remained in the hospital in a comatose state until early February. (Collier Dep., p. 23:17). Pursuant to the terms of the Plan, Brown & Williamson paid $740,085.82 in medical bills on behalf of Mrs. Collier for the injuries suffered as a result of the gastric bypass surgery. (Doc. 1, p. 3).

The Colliers subsequently filed a medical malpractice suit in the State Court of Bibb County against two doctors, a medical practice group, and Coliseum Medical Center. Brown & Williamson sought to intervene in the Colliers' medical malpractice action, but the motion was denied. In 2008, the case against Coliseum Medical Center settled for an undisclosed amount and the proceeds of the settlement were disbursed to the Colliers.

On April 3, 2009, Brown & Williamson filed a complaint against the Colliers for

---

failure to provide the required citations, all facts contained in Brown & Williamson's Statement of Facts have been deemed admitted.

equitable relief pursuant to 29 U.S.C. § 1132(e). (Doc. 1). In the complaint, Brown & Williamson alleges that the settlement proceeds from the medical malpractice suit against Coliseum Medical Center rightfully belong to the company, not to the Colliers, because the terms of the Plan established a lien against settlement proceeds. Further, Brown & Williamson asserts that the Plan includes a subrogation clause that reserves the company's right to be reimbursed on a first priority basis for benefits paid under the Plan. The clause in the Summary Plan Description reads:

> Plan's Right to Recover and Sue for Losses
>
> The Plan reserves the right to be reimbursed on a first priority basis for benefits paid under this Plan if you collect payments from a third party for the same injury or illness the Plan covers. This is called "subrogation." This provision helps the company continue providing cost-effective healthcare benefits.
>
> If you or your dependent has healthcare expenses as the result of injuries caused by another person, you or your dependent may have a claim against that person for payment of your healthcare bills. The Plan will be subrogated to the right of recovery you or your dependent has against the other person.
>
> This right to subrogation will be for the amount of benefits paid by the Plan for healthcare expenses. You or your dependent will be required to:
>
> • immediately provide the Plan with information and assistance necessary to enforce this right to subrogation
> • reimburse the Plan, in full and on a first priority basis, out of any money you receive from the other person or any business entity from a judgment, settlement or otherwise. This applies whether or not you are made whole, or the settlement or recovery designates the

3

recovery as including or excluding the Plan's medical
expense.

The Plan has the right to initiate legal action in the name of
the covered person against the third party to recover
expenses paid by the Plan. The recovery may include other
reasonable expenses, including the Plan's legal expenses.
The Plan, however, is not required to participate in or pay
attorney fees to the attorney hired by the covered person to
pursue the covered person's damage claim.

If a participant impairs the Plan's recovery rights or fails to
comply with the requirements of the Plan, the Plan may
obtain the amount of expenses related to the incident
directly from the participant (or employee) or by deducting
the amount of the expenses from the benefits under the
Plan.

(Doc. 31-3). At the time the lawsuit was filed, the Colliers were in possession of

$70,000 from the settlement of the medical malpractice suit against Coliseum

Medical Center. Pursuant to an order entered on July 27, 2009, the Colliers

placed the $70,000 in a non-interest bearing trust account pending the result of

this action.

## II.   Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue

to any material facts and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c). A genuine issue of material fact arises only when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505

(1986).

When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The Court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097 (2000).

The nonmoving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III.   Brown & Williamson's Motion for Summary Judgment

Brown & Williamson seeks relief under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), which reads as follows:

> (a) Persons empowered to bring a civil action
>
> A civil action may be brought-
> ...
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ...

29 U.S.C. § 1132(a)(3) (2000). This case centers around the scope of the phrase "other appropriate equitable relief," and whether Brown & Williamson's claims against the Colliers fit within the contemplation of § 502(a)(3).

The United States Supreme Court addressed the meaning of the phrase "other appropriate equitable relief" in Great-West Life & Annuity Insurance Co. v. Kundson. 534 U.S. 204, 122 S.Ct. 708 (2002). In Knudson, the Court held that claims for restitution brought by an ERISA fiduciary did not fall within the meaning of "other appropriate equitable relief" because the imposition of personal liability for a contractual obligation to pay money is legal, not equitable, relief. Id. at 221. The Court stressed that "whether [restitution] is legal or equitable in a particular case (and hence whether it is authorized by a § 502(a)(3)) remains dependent on the nature of the relief sought." Id. at 215.

After Knudson, a circuit split developed over whether an ERISA fiduciary

6

could ever recover under § 502(a)(3) if a beneficiary refused to honor subrogation and reimbursement provisions. The Fourth, Fifth, Seventh, and Tenth Circuits held that reimbursement proceedings fell within the scope of equitable proceedings under § 502(a)(3). *See* Mid Atl. Med. Servs. v. Sereboff, 407 F.3d 212, 219 (4th Cir. 2005); Admin. Comm. of the Wal-Mart Assoc. v. Willard, 393 F.3d 1119, 1125 (10th Cir. 2004); Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, 354 F.3d 348, 351 (5th Cir. 2003); Admin. Comm. of the Wal-Mart Stores Inc. v. Varco, 338 F.3d 680, 688 (7th Cir. 2003). On the other hand, the Sixth and Ninth Circuits held that reimbursement proceedings were more aptly described as legal relief, falling outside of the equitable relief provision in § 502(a)(3). *See* Qualchoice, Inc. v. Rowland, 367 F.3d 638, 650 (6th Cir. 2004); Westaff (USA) Inc. v. Arce, 298 F.3d 1164, 1167 (9th Cir. 2002).

The Supreme Court resolved the circuit split in Sereboff v. Mid Atlantic Medical Services, a case with facts similar to the ones at bar. 547 U.S. 356, 363, 126 S.Ct. 1869 (2006). In that case, the Court faced claims by a healthcare fiduciary for reimbursement pursuant to a subrogation clause found within an ERISA plan. Id. at 360. The Court concluded that ERISA did provide for equitable remedies to enforce plan terms, and therefore an ERISA fiduciary could use § 502(a)(3) to bring a civil action for reimbursement. Id. at 363. To use § 502(a)(3) as an avenue to file a claim, the money sought must be specifically identifiable, rather than general assets, and must also be within possession and control of the beneficiaries. Id. The Court noted that if the remedy sought by a fiduciary met the

7

test for equitable relief within the scope of § 502(a)(3), then reimbursement according to the terms of the plan was appropriate. Id. at 363.

This Court has recognized the propriety of equitable remedies in ERISA litigation. B.P. Amoco Corp. v. Connell, 320 F.Supp.2d 1368, 1372 (M.D. Ga. 2004). In that case, an employer sought restitution under § 502(a)(3) from an ERISA plan participant for medical benefits paid on behalf of covered dependents. Id. at 1370. The relief sought was deemed equitable in nature because it was held in trust, making it specifically identifiable, and also was in control of the beneficiaries. Id. at 1371. This Court observed that "[t]he essence of the equitable remedy of restitution is the restoration of particular property to its rightful owner;" consequently, the employer was legally entitled to restitution as a matter of law, and summary judgment in favor of the employer was granted. Id. at 1372. The employer received $64,531.45 as reimbursement from the participant. Id.

Here, it is undisputed that the Colliers are in possession of the $70,000 currently being held in a non-interest bearing account. The fund is specifically identifiable and within the Colliers' possession, thus satisfying the Sereboff standard for cognizable relief under § 502(a)(3). Accordingly, the Court must enforce the Plan's subrogation terms as a matter of law. Therefore, Brown & Williamson's Motion for Summary Judgment is granted.

## IV.   The Colliers' Motion for Summary Judgment

While the Court finds that summary judgment in Brown & Williamson's

8

favor is appropriate, it will nevertheless address the contentions set forth by the Colliers in their Motion for Summary Judgment.

### A.    O.C.G.A. § 33-24-56.1 does not apply

The Colliers claim that a Georgia anti-subrogation statute, O.C.G.A. § 33-24-56.1, should control in this case. The Colliers seek application of ERISA's Savings Clause and the McCarran-Ferguson Act, both of which preserve a state's ability to preempt federal law in narrow circumstances. The Savings Clause allows state law to escape federal preemption if the law relates to an employee welfare plan and regulates insurance. 29 U.S.C. § 1144(b)(2)(A). Similarly, the McCarran-Ferguson Act allows for state law regulating the "business of insurance" to reverse-preempt federal laws. 15 U.S.C. § 1012(b). However, neither of these federal statutes applies in the present case.

The Savings Clause is inapplicable because of the Deemer Clause, 29 U.S.C. § 1144(b)(2)(B), which "exempt[s] self-funded ERISA plans from state laws that "regulat[e] insurance' within the meaning of the savings clause." FMC Corp. v. Holliday, 498 U.S. 52, 61, 111 S.Ct. 403 (1990). Brown & Williamson's Plan is a self-funded welfare benefit program, thus falling squarely within the domain of the Deemer Clause, outside of the reach of state regulation.

Further, the McCarran-Ferguson Act is inapplicable in this case because McCarran-Ferguson can only reverse-preempt a federal statute that does not specifically relate to insurance. 15 U.S.C. § 1012(b). If a federal statute indirectly affects insurance, then state law can preempt; however, if a federal statute

9

explicitly deals with insurance regulation, then the federal statute controls. <u>United States v. Fabe</u>, 508 U.S. 491, 507, 113 S.Ct. 2202 (1993). Here, section 502(c)(3) of ERISA explicitly regulates the business of insurance by declaring those parties who are empowered to bring civil actions under the insurance regulatory scheme, and thus McCarran-Ferguson's reverse-preemption doctrine does not apply.

Neither the Savings Clause nor the McCarran-Ferguson Act applies in this case. Thus, federal law preempts Georgia's anti-subrogation statute, O.C.G.A. § 33-24-56.1, and consequently, the subrogation clause in Brown & Williamson's Plan stands.

**B.    The "make-whole" doctrine does not apply**

The "make-whole" doctrine provides that "an insured who has settled with a third-party tortfeasor is liable to the insurer-subrogee only for the *excess* received over the total amount of his loss." <u>Cagle v. Bruner</u>, 112 F.3d 1510, 1520 (11th Cir. 1997) (citing <u>Guy v. Se. Iron Workers' Welfare Fund</u>, 877 F.2d 37, 39 (11th Cir. 1989) (emphasis in original)). The Colliers allege that they should be able to keep the $70,000 because they have not yet been "made whole."

While the Colliers correctly assert that the "make-whole" doctrine is the default rule in the Eleventh Circuit, the Colliers fail to acknowledge that the doctrine can be expressly excluded. <u>Cagle</u>, 112 F.3d at 1520-21. In <u>Cagle</u>, the Eleventh Circuit evaluated a subrogation clause within an ERISA plan and concluded that the clause contained standard subrogation language and did not

10

demonstrate an express rejection of the make-whole doctrine. Id. at 1521. However, the court noted that an ERISA plan could override application of the doctrine if the plan included language "specifically allow[ing] the Plan the right of first reimbursement out of any recovery [the participant] was able to obtain even if [the participant] were not made whole." Id. at 1522 (citing Barnes v. Indep. Auto. Dealers Ass'n, 64 F.3d 1389, 1395 (9th Cir. 1995)).

Here, the Plan explicitly rejects the "make-whole" doctrine by stating that the reimbursement provisions apply "whether or not you are made whole." (Doc. 31-3). This express rejection of the "make-whole" doctrine within the terms of the Plan indicates that the doctrine does not apply in this case.

The Colliers also assert two contractual claims in an effort to justify application of the "make-whole" doctrine: 1) the Plan booklet does not constitute a "contract;" and 2) the terms of the Plan are unconscionable and constitute surprise. However, neither of these arguments has merit.

### 1. The Plan booklet

The Colliers' argument that the Plan booklet is not an actual contract is groundless. In a case much like the present one, this Court previously struck down a similar argument as being without merit, emphasizing that the dispute ultimately revolved around benefits already paid by the fiduciary, not the existence of a contract. Amoco, 320 F.Supp.2d at 1372. Like in Amoco, the issue before this Court is not whether a contract exists, but instead whether a § 502(a)(3) action is appropriate. Thus, the Colliers' argument that the Plan booklet

11

is not legally binding is without merit.

### 2. The terms of the Plan are not unconscionable and do not constitute surprise

The Colliers' allegation that the terms of the Plan are unconscionable and constitute surprise is also without merit. The Colliers assert that the Plan's express rejection of the "make-whole" doctrine constitutes an unconscionable term that robs them of a legal right. However, express rejection of the "make-whole" doctrine has been judicially recognized as a legitimate business practice, and therefore contractual rejection cannot be considered unconscionable. *See* Cagle, 112 F.3d at 1521; Barnes, 664 F.3d at 1395; Cutting v. Jerome Foods, Inc., 993 F.2d 1293, 1297 (7th Cir. 1993).

As for the Colliers' claims that the Plan terms constituted surprise, Mrs. Collier's actions while she was a beneficiary of the Plan demonstrate both her awareness and agreement to terms of the Plan. She understood she was a party to an insurance agreement for healthcare coverage. (Collier Dep., p. 29:12). She does not dispute that she received benefits pursuant to her enrollment in the Plan. (Collier Dep., p. 6:17, 7:15). She actively sought out the benefits for which she was eligible under the Plan. (Collier Dep., p. 7:23). She never offered to pay for or fund her own surgery. (Collier Dep., p. 8:21) Mrs. Collier's actions clearly demonstrate that she was aware that she was the beneficiary of an agreement, and therefore she can hardly be surprised by the Plan's requirement of some reciprocal obligation.

12

### C.    O.C.G.A. § 16-10-95 does not apply

The Colliers rely on now-repealed O.C.G.A. § 16-10-95 to argue that the terms of the Plan are unlawful, violating state laws against champerty and barratry. The Colliers allege that the Plan's provision which secures the right "to initiate legal action in the name of the covered person against the third person." is an illegal assignment of a personal injury cause of action. (Doc. 29-2, p. 12). Defendants contend that this illegal assignment of a cause of action amounts to "groundless actions in the courts," which is prohibited by O.C.G.A. § 16-10-95. However, this Court has previously recognized that ERISA regulations preempt Georgia law prohibiting the assignment of a personal injury claim. Thompson v. Fed. Express Corp., 809 F. Supp. 950, 955 (M.D. Ga. 1992). The assignment of claims has been held to be legal, and thus does not violate the criminal prohibition on barratry found in O.C.G.A. § 16-10-95.

### D.    Proximate causation is not at issue

Finally, the Colliers argue that the present case is devoid of necessary expert testimony establishing proximate causation. The case before this Court does not require the parties to prove the elements of medical malpractice. Instead, this case focuses on whether a claim brought under § 502(a)(3) is appropriate. Thus, this argument is without merit.

## V.   Conclusion

Consistent with the foregoing, Plaintiff's Motion for Summary Judgment (Doc. 31) is granted. Defendants' Motion for Summary Judgment (Doc. 29) and

Defendants' Amended Motion for Summary Judgment (Doc. 34) are denied, and Defendants' Motion for Leave to Amend Defendants' Answer to Plaintiff's Complaint (Doc. 33) is also denied as moot.

Pursuant to this holding, the Clerk is directed to enter judgment in favor of Brown & Williamson, and the Colliers are ordered to restore the subject funds to Brown & Williamson.

**SO ORDERED**, this the 13th day of April, 2010.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

ebr